**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANNA C. COLEMAN, *Plaintiff,* | ) | |
| *v.* | ) | Case No. ______________________ |
| CHILDREN FIRST PA *Defendants.* | ) | |

**CIVIL ACTION - COMPLAINT**

## I. Introduction

1. This is a civil rights action asserting primarily claims arising under Plaintiff's rights under the United States Constitution and pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"- 42 U.S.C. § 2000e et seq.); 42 U.S.C. §1981.

2. Plaintiff is pursuing this civil rights suit for race discrimination, hostile work environment, and retaliation against her former employer, Defendant CHILDREN FIRST PA, a private company, and who maintained an employer-employee relationship with Plaintiff, until the date of her being laid off in July 23, 2024.

3. Plaintiff pursues her Title VII claims against Defendant CHILDREN FIRST PA, having exhausted her administrative remedies by filing charges with the Equal Employment Opportunity Commission (EEOC), having obtained her "right to sue" letter on August 6, 2026.

4. Plaintiff also pursues her 42 U.S.C. §1981 claims against private-actor Defendant CHILDREN FIRST PA, claims which do not require exhaustion of administrative remedies, and which have a 4-year statute of limitations which runs from the date of termination. 28 U.S.C. § 1658(a)

## II. Jurisdictional Statement

5. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

6. This Court may properly maintain personal jurisdiction over the Defendants whose contacts with this state and judicial district are sufficient for the exercise of jurisdiction by the Honorable Court, which would require Defendants to comply with traditional notions of fair play and substantial justice in this district, thus satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8. Plaintiff exhausted federal administrative remedies for claims under Title VII by first filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and did receive a notice of right to sue on August 6, 2026; Charge No: **530-2024-07073**

9. At all times relevant herein, Defendants CHILDREN FIRST PA acted by and through their agents, servants and employees, named herein, each of whom acted at all times relevant herein in the course and scope of their employment with respective Defendants.

10. At all times relevant herein, Defendants CHILDREN FIRST PA acted by and through their agents, servants and employees, named herein, each of whom acted at all times relevant herein in the course and scope of their employment with respective Defendants.

11. Plaintiff was at all times pertinent to these pleadings an employee Defendants CHILDREN FIRST PA, pursuant to common law standards.

## III. Parties

12. Plaintiff is an adult individual, resident of Philadelphia County, Commonwealth of Pennsylvania.

13. Plaintiff identifies as a Black and gender non-conforming woman.

14. Defendant CHILDREN FIRST ("PMHCC Defendants") is a Pennsylvania private corporation, registered to do business in the Commonwealth of Pennsylvania as a foreign corporation, with principal place of business at 990 SPRING GARDEN ST STE 600 PHILADELPHIA, PA 19123-2638.

## IV. Facts

### *A. Plaintiff's Employment Qualifications and Work Experience*

15. Plaintiff has expertise, training, and certifications in implementing Diversity, Equity, and Inclusion (DEI) policies in the workplace to both ensure equitable management and team development, and ultimately to adequately serve the needs of all communities in the City of Philadelphia regardless of their race, gender, sexual orientation, national origin, religion, and/or zip code.

16. Plaintiff has a Certification in Diversity Equity and Inclusion (DEI) in the Workplace from the University of South Florida.

17. Plaintiff has significant work experience analyzing public health administration data.

18. Plaintiff has two Master's Degrees, Master of Art in Sociology from the University of North Carolina at Charlotte and a Master of Public Health from the University of Pennsylvania.

19. Plaintiff beginning in March 2021 co-created and mobilized the "Philly Teen Vaxx Ambassadors", a group of youth leaders who volunteered to provide education to their peers

and others about the importance of getting vaccinated against COVID-19, along-side, Philadelphia School District, Dr. Barbara Klock, and CHOP RN Sophia Collins.

***B. Plaintiff's Work with Defendant CHILDREN FIRST PA***

20. Plaintiff was hired by Defendant CHILDREN FIRST PA, with a start date of Monday, September 25, 2023.

21. Defendant CHILDREN FIRST PA hired Plaintiff for her qualifications and experience in education policy, advocacy work, community engagement, campaign work, and program development and design.

22. On July 23, 2024, Plaintiff was laid off from her position with Defendant CHILDREN FIRST PA.

23. Plaintiff's work with Defendant CHILDREN FIRST PA involved designing a youth-lead campaign that centered education funding policy.

24. Plaintiff's position Justice in Education Coordinator with Defendant CHILDREN FIRST PA in the "*Justice In Education"* campaign involved education policy, where she/they:

    a. Designed, organized, and implemented a state-wide youth-led "*Justice In Education*" campaign in response to a lawsuit brought in 2014 by several school districts, parents, and advocacy groups that argued Pennsylvania's current school funding system is unconstitutional because it failed to provide all students with a "*thorough and efficient*" education (as required by the Pennsylvania Constitution's Education Clause) and violates equal protection (by causing disparities particularly harming "low-wealth" districts);

b. Designed and taught a Civic Engagement and Advocacy curriculum for youth to include Policy Briefs, Press Releases, Social Media Advocacy, Legislative Meetings, Public Speaking, and Lobbying;

c. Participated in grant writing with development team to procure funding to sustain "*Justice In Education*" campaign work;

d. Mentored and empowered 150+ students (ages 12-22) to impact Pennsylvania school funding policy to reflect equitable funding across school districts;

e. Tracked and met daily/weekly metrics using ASANA, and prepared regular and ongoing reports for funders;

f. Empowered and supported education youth-advocates with organizing school board, legislative, and community events (rallies, press conferences, lunch& learns, legislative meetings, etc.) with PA Senators, State Representatives, City Council, Superintendents, Principals, Educators, Students, and others.

25. Plaintiff's work with Defendant CHILDREN FIRST PA was featured in: 1) iHeartRadio, 2) WHYY, 3) Looped In Podcast, and 4) PennLive.

26. At all times pertinent to the factual pleadings, Defendant CHILDREN FIRST PA was directly responsible for Plaintiff's work, including training, management, and supervision.

***C. Plaintiff's Race-Discrimination Claims against Defendant CHILDREN FIRST PA***

***I. Racist Comment by Executive Director, Donna Cooper***

27. On August 18, 2023, Plaintiff, Ms. Coleman was interviewed via Zoom by Donna Cooper, Executive Director for Defendant CHILDREN FIRST PA.

28. During the hire interview, Donna Cooper, Executive Director said to Ms. Coleman, "in order to be successful at this job, you will need to ***code switch***."

29. Executive Director Donna Cooper is a white woman.

30. Following the interview, Ms. Coleman contacted Priyanka Reyes-Kaura, K-12 Education Policy Director for Defendant CHILDREN FIRST PA.

31. Plaintiff informed Priyanka Reyes-Kaura that she was disturbed by Donna Cooper's statement about "code switching."

32. Plaintiff expressed that the statement was unprofessional, racist, and discriminatory, and she felt reluctant and concerned about accepting the position.

33. Priyanka Reyes-Kaura responded to Ms. Coleman's concerns with "that's just Donna; that's just how she is."

34. Following Ms. Coleman's conversation with Priyanka Reyes-Kaura, Ms. Coleman contacted Dr. Barbara Klock and informed her of the statement that was made by Donna Cooper about "code switching" and Ms. Coleman asked Klock advice about whether or not to accept the job in lieu of the comment made.

### *II. Discrimination based on Sexual Orientation at a Work Luncheon*

35. In October 2023, Defendant CHILDREN FIRST PA First hosted a youth event called "The Big Thing 2.0" at WHYY's headquarters in Philadelphia, which brought together over 125 young people, parents, educators, and advocates to tackle key educational and equity issues.

36. Following that event, Executive Director Donna Cooper invited employees to a luncheon.

37. During the luncheon, Gail Smith, Finance & HR Administrator for Defendant CHILDREN FIRST PA, made the following comment in the presence of all attendees, "that must be the gay table", after observing that one of the tables was occupied by four "gay employees".

38. Following the comment, multiple employees responded with laughter.

39. Plaintiff, Ms. Coleman and the other "gay employees" responded by looking at one another, appearing uncomfortable.

40. Plaintiff responded verbally with, "well I guess I need to move to another table".

### *III. Discrimination based on Race at a Work Luncheon*

41. During the same luncheon, Executive Director Donna Cooper, after consuming a few alcoholic drinks, referred to black communities as "coloreds" in the presence of everyone sitting at her table, including Plaintiff, Ms. Coleman.

42. Following the comment, all employees sitting at Donna Cooper's table looked at Plaintiff, Ms. Cooper, and ceased all communication.

43. After that, Plaintiff, Ms. Coleman looked back at Executive Director Donna Cooper, got up from her seat at the table, went into the bathroom, contacted Dr. Barbara Klock, who is a work colleague from a previous job, expressed to her what happened and feelings of disbelief at the racism and discrimination she just experienced.

44. Plaintiff, Ms. Coleman eventually returned to the table with feelings of disbelief and reflected on Donna Cooper's comments about "code switching", that she made during the August 2023 interview.

### *IV. Differential Treatment based on Race and Retaliation*

45. After working for a few months in the role in which she was hired for, in November 2023, Plaintiff Dianna Coleman, began expressing concerns to immediate supervisor, Priyanka Reyes-Kaura, about

    a. Being overworked as Plaintiff was working, on average about 70 hours per week;

    b. A request to change position title from Coordinator to Manager because Plaintiff Ms. Coleman was performing tasks that reflected an increased level of

responsibility than what was explained upon hire, e.g., grant writing, program design, etc.;

c. A request to explore more efficient ways to perform duties while also working "reasonable" hours.

d. A request to receive gas mileage reimbursement as Plaintiff was driving across Philadelphia, Delaware County, Montgomery County, Bucks County, Chester County regularly throughout the week in order to perform duties.

46. After Plaintiff Ms. Coleman expressed her concerns and made the requests outlined in Paragraph 46, Priyanka Reyes-Kaura's behavior became unprofessional, inappropriate and demeaning.

47. For example, Priyanka Reyes-Kaura would stand over Ms. Coleman, point her finger in Ms. Coleman's face, and shout as her way of communicating.

48. Priyanka Reyes-Kaura would not shout or raise her voice at white employees.

49. When in meetings with external partners and superintendents, Priyanka Reyes-Kaura would overtalk, speak for, and interrupt Ms. Coleman.

50. During meetings with external partners, to include superintendents, Priyanka Reyes-Kaura would also single-out Plaintiff by having Ms. Coleman point out qualifications, education, and experiences from her work history and resume, in an attempt to justify why Ms. Coleman was qualified to do the work that she was hired for.

51. Priyanka Reyes-Kaura would not interrupt, question or bolster the qualifications of herself or white employees during these meetings.

52. Enduring this implicit racial stereotyping and racialized-based differential treatment from Priyanka Reyes-Kaura, left Plaintiff Ms. Coleman, feeling patronized, disrespected, distrusted, and isolated.

53. Plaintiff Ms. Coleman made a request to Priyanka Reyes-Kaura to meet with co-worker Shirley Howe, Suburban Field Manager and herself (Ms. Coleman) to discuss incidents outlined in paragraphs 46-52.

54. Following the meeting with Plaintiff Ms. Coleman, Priyanka Reyes-Kaura, and Shirley Howe, Ms. Coleman began experiencing even more incidents of microaggression at the hands of Priyanka Reyes-Kaura.

### *V. Plaintiff's Grievances to HR*

55. In December 2023, Ms. Coleman brought her grievance to her appointed "onboarding liaison", Inella Ray, Director of Parent Advocacy and Engagement, about each of the incidents that had taken place beginning with her August 2023 interview with Donna Cooper to the most recent treatment from Priyanka Reyes-Kaura.

56. Inella Ray encouraged Plaintiff Ms. Coleman reported all incidents to Brian Lang, Deputy Director for Operations who also performed HR duties for Defendant CHILDREN FIRST PA.

57. In December 2023, Plaintiff Ms. Coleman informed immediate supervisor Priyanka Reyes-Kaura that she no longer felt safe meeting with her alone and that she would be meeting with Brian Lang to discuss all of her concerns.

58. In December 2023, Plaintiff Ms. Coleman requested to meet with Brian Lang via email. Once Brian Lang identified a date in December 2023, Plaintiff Ms. Coleman met with Brian Lang to discuss all grievances.

59. During Plaintiff Ms. Coleman's meeting with Brian Lang, Lang documented all incidents of discrimination and racism on a note pad.

60. At the conclusion of the meeting, Brian Lang stated to Ms. Coleman that he would transfer all notes from the meeting to an email and send it to Ms. Coleman.

61. Following multiple requests to obtain grievance notes via email, Lang did not produce them to Plaintiff Ms. Coleman.

62. At the conclusion of the meeting, Plaintiff Ms. Coleman requested that Brian Lang set up a meeting between Plaintiff and Donna Cooper.

***VI. Donna Cooper's Retaliatory and Microaggressions towards Ms. Coleman***

63. Upon Brian Lang's receiving Plaintiff Ms. Coleman's grievances and request for a meeting with Donna Cooper, Brian Lang scheduled the meeting.

64. In December 2023, Ms. Coleman attended the meeting with Brian Lang and Donna Cooper in-person at Defendant CHILDREN FIRST PA, 990 Spring Garden Street.

65. At the meeting Ms. Coleman expressed each of her grievances from August, 2023 thru December 2023.

66. Donna Cooper minimized Ms. Coleman's grievances and focused blame on Ms. Coleman for the workplace issues she raised in the meeting.

67. Donna Cooper stated that Ms. Coleman was new to Children First PA, that Ms. Coleman needed to capitulate and work on her relationship with Priyanka, that Children First PA would bring in a consultant to assist in that regard and monitor Ms. Coleman's relationship with Priyanka, and following 30-days, she (Donna Cooper) would reevaluate Ms. Coleman's acquiescence in her relationship with Priyanka and make a determination about Ms. Coleman's employment.

68. During the mediation meetings between Plaintiff Ms. Coleman and Priyanka, Priyanka admitted to the consultant that she had indeed been treating Ms. Coleman in the manner in which Ms. Coleman reported. When asked why, Priyanka stated, “this is how Donna Cooper treats me”.

### *VII. Donna Cooper’s Microaggressions towards and Mistreatment of Ms. Coleman in Staff Meetings*

69. Following Ms. Coleman’s meeting with Donna Cooper in the presence of Brian Lang, Plaintiff suffered micro-aggressions and was treated unfairly and dismissively by Donna Cooper.

70. During Monday all staff meetings, Donna Cooper would interrupt and cut off Ms. Coleman from speaking or asking questions of the group, other employees were not treated the same.

71. During Monday all staff meetings, Donna Cooper would yell at Ms. Coleman.

72. During Monday all staff meetings, Donna Cooper would be dismissive of Ms. Coleman when she spoke.

73. During Monday all staff meetings, Donna Cooper would verbally scold Ms. Coleman in front of employees for failing to follow protocols that Ms. Coleman should have been informed by supervisor Priyanka, however Ms. Coleman was provided misinformation by Priyanka.

74. For instance, Priyanka provided incorrect information to Ms. Coleman regarding where and when she should report for the Monday all staff meeting during her first day, causing Ms. Coleman to be late. Unaware that Priyanka had provided Ms. Coleman with incorrect guidance, Donna Cooper yelled at Ms. Coleman for being late for her first day of work in the presence of Brian Lang.

75. Also, Priyanka incorrectly informed Ms. Coleman regarding the proper protocols to use when planning and executing a public-facing event.

76. Unaware that Priyanka had provided Ms. Coleman with incorrect guidance, Donna Cooper yelled at Ms. Coleman and called out Plaintiff Ms. Coleman during a Monday all staff meeting.

### *VIII. Donna Cooper's Microaggressions towards and Mistreatment of Ms. Coleman in Staff Meetings*

77. Donna Cooper hired a consultant named Lorraine Marino, Cofounder, Whites Confronting Racism, 320 Nottingham Place, Chalfont, PA 18914.

78. Lorraine Marino first started meeting with employees of Defendant CHILDREN FIRST PA, and held meetings with small groups that include Plaintiff Ms. Coleman and a sample of her coworkers.

79. In response to Lorraine Marino's meetings, employees of Defendant CHILDREN FIRST PA started expressing concerns about Donna Cooper's behavior and her mistreatment of certain staff members to include Plaintiff Ms. Coleman.

80. During the initial small group meeting with Lorraine Marino, and in the presence of other Children First PA employees, Inella Ray expressed her observations of the continuous mistreatment of Plaintiff Ms. Coleman by Donna Cooper. Plaintiff was not present for this meeting, however, it was reported back to her.

81. During another small group meeting with Lorraine Marino, Steve Fynes, Administrative Director, cried while expressing his ongoing observation of the mistreatment of Plaintiff Ms. Coleman by Donna Cooper, and his inability to address it with Donna Cooper out of fear of retaliation from Donna Cooper.

### *IX. Donna Cooper's Worsening Microaggressions towards and Mistreatment of Ms. Coleman*

82. Following the small group meetings with Lorraine Marino, the mistreatment of Plaintiff Ms. Coleman at the hands of Donna Cooper escalated.

83. Ms. Coleman eventually expressed to Lorraine Marino that due to the increased and worsening incidents of mistreatment and micro-agressions, that she no longer felt safe attending the small group meetings.

### *X. Donna Cooper's Microaggressions towards and Mistreatment of Ms. Coleman in Staff Meetings*

84. During July 2023, Donna Cooper and Brian Lang, held a meeting with Ms. Coleman about her being potentially "laid off" due to the Board of Directors at Defendant Children First PA making a decision to eliminate the "*Justice In Education"* program.

85. On July 23, 2024, Donna Cooper contacted Plaintiff Ms. Coleman stated that July 23, 2024 would be her last day working for Defendant Children First PA.

**COUNT I: <u>Violation of Title VII of the Civil Rights Act of 1964, as amended</u>**

**[1] Race / Color Discrimination, [2] Retaliation and [3] Hostile Work Environment**

86. Plaintiff incorporates all prior paragraphs and pleadings, ¶¶ 1. - 85.

87. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88. Defendant CHILDREN FIRST PA, and through its employees and agents, by vicarious liability, intentionally discriminated against Plaintiff when it retaliated against her, and through its retaliatory actions, condoning and encouraging a hostile work environment, making arbitrary disciplinary decisions, and leading ultimately to the unlawful termination of employment based on race discrimination, with Plaintiff's race as a Black and gender non-conforming woman serving as a motivating factor in its decisions.

89. Plaintiff was subjected to harassment and discriminatory comments based on her race/color and engagement in protected activity. The same constitutes a hostile work environment (racial and retaliatory).

90. Based on the foregoing, Plaintiff was also subjected to disparate treatment based on her race/color, by Defendants CHILDREN FIRST PA.

91. Moreover, Plaintiff was subjected to retaliation for engaging in protected activity such as making grievances, reporting micro-aggressions, reporting being overworked, relaying her concerns about her emotional safety, and disclosing her grievances to a workplace consultant.

92. These actions as aforesaid constitute violations of Title VII.

**COUNT II: Violation of 42 U.S.C. § 1981**

**[1] Race/Color Discrimination, [2] Retaliation and [3] Hostile Work Environment**

93. Plaintiff incorporates all prior paragraphs and pleadings, ¶¶ 1. - 92.

94. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

95. Plaintiff is pursuing her Section 1981 claims against Defendant CHILDREN FIRST PA which is a private entity.

96. Plaintiff's claims under Section 1981 against Defendant CHILDREN FIRST PA do not require EEOC exhaustion and are timely because they commenced within the 4-years of the date of Plaintiff being laid off on July 23, 2024.

97. Based on the foregoing pleadings, Plaintiff was subjected by Defendant CHILDREN FIRST PA to harassment and discriminatory comments based on her race and engagement in protected activity, which constitutes a hostile work environment (racial and retaliatory)

98. Based on the foregoing pleadings, Plaintiff was also subjected to disparate treatment based on her race by Defendant CHILDREN FIRST PA.

99. Moreover, Plaintiff was subjected to retaliation for engaging in protected activity when she made grievances about her mistreatment by supervisors, Priyanka Reyes-Kaura and Donna Cooper.

## V. **Relief Sought.**

WHEREFORE, Plaintiff requests the following relief:

a). A jury trial pursuant to the Seventh Amendment to the U.S. Constitution;

b). Compensatory damages against Defendants, in excess of $150,000, jointly and severally, in favor of Plaintiff;

c). If appropriate, punitive damages against Defendants, jointly and severally, in favor of Plaintiff

Date: November 4, 2026

Respectfully submitted,



*/s/ LUCAS T. NASCIMENTO, ESQ.*

Lucas T. Nascimento, Attorney at Law
Land Title Building
100 S. Broad St., Ste. 1830
Philadelphia, PA 19110
P: 215-944-4428
C: 609-703-3441
Nascimentolaw@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANNA C. COLEMAN, *Plaintiff,* | ) | |
| *v.* | ) | Case No. ____________________ |
| CHILDREN FIRST PA *Defendants.* | ) | |

## VERIFICATION

Pursuant to Fed.R.Civ.P. Rule 11, the undersigned counsel avers, under penalty of perjury, that the facts and averment contained in the foregoing Verified Complaint are true and correct to the best of his knowledge, understanding and belief.



Date: November 4, 2026

/s/ *Lucas T. Nascimento, Esq.*

Lucas T. Nascimento, Attorney at Law
Land Title Building
100 S. Broad St., Ste. 725
Philadelphia, PA 19110
P: 215-944-4428
C: 609-703-3441
Nascimentolaw@gmail.com